1  JAMES L. PAGANO, ESQ. (Cal. State Bar No. 098185)
   IAN A. KASS, ESQ. (Cal. State Bar No. 184480)
2  PAGANO & KASS, APC
   96 North Third Street, Suite 525
3  San Jose, California 95112
   Telephone:  (408) 999-5678
4  Facsimile:  (408) 999-5684

5  Attorneys for Plaintiffs, IAN MCCRAY,
   an individual, on behalf of himself, and on
6  behalf of all other persons similarly situated

7

8              IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    [San Jose Division]

11 IAN MCCRAY, an individual, on behalf of      Case No.: 5:16-cv-01233 – BLF
   himself, and on behalf of all other persons
12 similarly situated,                          PLAINTIFF'S  OPPOSITION  TO
                                                'DEFENDANT'S  MOTION  TO  DISMISS
13         Plaintiffs,                          AMENDED COMPLAINT"

14 v.                                           Date:      February 9, 2017
                                                Time:      9:00 a.m.
15 UNITE HERE!, LOCAL 19,                       Courtroom: 3
                                                Judge:     Hon. Beth Labson Freeman
16         Defendant.

17 _____/

18

19

20

21

22

23

24

25

26

27

28

_____
PLAINTIFF'S OPPOSITION TO "DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT"

# Table of Contents

page

I.   INTRODUCTION                                                                          1

II.  THE AMENDED COMPLAINT                                                    2

III. LEGAL DISCUSSION                                                              4

    A.   THE LEGAL STANDARDS UNDER FEDERAL RULES OF CIVIL
        PROCEDURE PERTAINING TO MOTIONS TO DISMISS.          4

    B.   THE AMENDED COMPLAINT IS NOT TIME-BARRED.             5

        1.   The Amended Complaint Does Not Disclose on Its Face When
            the Cause of Action Sued Upon Accrued.                           6

            a.   Even Assuming, *Arguendo*, That the Statute of
                Limitations Would Have Expired, Proper Application
                of The Doctrine of Equitable Estoppel Prevents its
                Expiration for McCray's Claims at Issue Here.                  8

            b.   Alternatively, the Doctrine of Equitable Tolling
                Prevents Expiration for McCray's Claims Under
                the Allegations that Are at Issue Here.                           12

    C.   THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES
        CLAIMS FOR RELIEF.                                                    13

        1.   McCray's Claim for Breach of DFR Claim Is Validly Stated.   13

            a.   The Ordinance Allows Collective Bargaining Opt-Outs
                Only When Required by Federal Law; Defendant Fails
                to Demonstrate Such a Requirement Under Federal Law.    13

            b.   Defendant's Agreement Purporting to Exclude McCray
                and Those Similarly Situated to Him from Being Paid
                the San Jose Required Minimum Wage, Was Arbitrary
                and Unreasonable and, Thus, Breached the DFR.            19

        2.   McCray's State Law Claims Are Not Preempted.               23

        3.   Defendant's Motion, to the Extent it Takes Issue with the
            Punitive and Exemplary Damage Claims Set Forth in the
            Amended Complaint Is Procedurally Flawed and the Argument
            Should, Therefore, Be Ignored.                                   25

IV.  CONCLUSIONS                                                                    25

1

**Tables of Authorities**

2

pages

Federal Cases

3

4

*AVCO Corp. v. Precision Air Parts, Inc.,*                          6
676 F.2d 494 (11th Cir. 1982)

5

*Addington v. US Airline Pilots Ass'n,*                          13, 14, 20,
791 F.3d 967(9th Cir. 2015)                                    21, 22

6

7

*Adkins v. Mireles,*                                          23, 24
526 F.3d 531 (9th Cir. 2008)

8

*Air Line Pilots Ass'n, Intern. v. O'Neill,*                    2, 13, 19,
499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)             20

9

*Am. Pipe & Const. Co.,*                                     8
414 U.S. 538,  94 S.Ct. 756, 38 L.Ed.2d 713 (1974)

10

11

*American Hotel & Lodging Association v. City of Los Angeles,*   11, 15, 21
119 F.Supp.3d 1177 (C.D.Cal. 2015)

12

*Ashcroft v. Iqbal,*                                          4, 5, 14
556 U.S. 662, 129 S.Ct. 1937, 137 L.Ed.2d 868 (2009)

13

14

*Associated Builders and Contractors of Southern California, Inc. v. Nunn,*   20
356 F.3d 979 (9th Cir. 2004)

15

*Bell Atlantic Corp. v. Twombly,*                              5
550 U.S. 544, 127 S.Ct. 1955, L.Ed.2d 929 (2007)

16

17

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*           7
2011 WL 1044899 (N.D.Cal. Mar. 23, 2011)

18

19

*Cahill v. Liberty Mut. Ins. Co.,*                            4
80 F.3d 336 (9th Cir. 1996)

20

*Chamber of Commerce of U.S. v. Bragdon,*                     16
64 F.3d 497 (9th Cir.1995)

21

22

*Chamber of Commerce of United States of America v. Whiting,*   15
563 U.S. 582, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011)

23

*DelCostello v. Int'l Bhd. of Teamsters,*                      1, 2, 7
462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)

24

*Diaz v. Safeway Inc.,*                                       10
2007 WL 2793367(N.D.Cal. 2007)

25

26

*Dillingham Const. N.A., Inc. v. County of Sonoma,*            20
190 F.3d 1034 (1999)

27

*Erickson v. Pardus,*                                         4
28
551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)

**Tables of Authorities (cont.)**

pages

Federal Cases (cont.)

*Farmer v. United Brotherhood of Carpenters,*                                    24, 25
430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977)

*Foresberg v. Fidelity Nat. Credit Services, Ltd.*,                              4
2004 WL 3510771 (S.D.Cal. 2004)

*Fort Halifax Packing Co. v. Coyne*,                                             11, 21
482 U.S. 1, 21–22, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)

*Fraley v. Facebook, Inc.*,                                                      6, 18
830 F.Supp.2d 785 (N.D.Cal. 2011)

*Gustafson v. Alloyd Co., Inc.*,                                                 16
513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)

*Jablon v. Dean Witter & Co.,*                                                   6
614 F.2d 677 (9th Cir. 1980)

*Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*,                          10, 12
2009 WL 160214 (N.D.Cal. 2009)

*Lawson v. FMR LLC,*                                                             15
— U.S. —, 134 S.Ct. 1158, 188 L.Ed.2d 158 (2014)

*Lee v. City of Los Angeles*,                                                    18
250 F.3d 668 (9th.Cir. 2001)

*Lehman v. United States*,                                                       12-13
154 F.3d 1010 (9th Cir.1998)

*Livadas v. Bradshaw*,                                                           15
512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)

*Lopez v. HMS Host, Inc.,*                                                       6
2010 WL 956457 (N.D.Cal. 2010)

*Marquez v. Screen Actors Guild, Inc.*,                                          19
525 U.S. 33, 119 S.Ct. 292, 142 l.Ed.2d 242 (1998)

*Metro. Life Ins. Co. v. Massachusett*,                                          11, 21
471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)

*Milliner v. Bock Evans Financial Counsel, Ltd.*,                               6
114 F.Supp.3d 871 (N.D.Cal. 2015)

*Morgan v. Heckler*,                                                             10
779 F.2d 544 (9th Cir. 1985)

*Naton v. Bank of California,*                                                   12-13
649 F.2d 691 (9th Cir.1981)

1

**Tables of Authorities (cont.)**

pages

2

Federal Cases (cont.)

3

*Neitzke v. Williams,*     4
4   490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)

5

*Owens v. Kaiser Found. Health Plan, Inc.,*     5
244 F.3d 708 (9th Cir. 2001)

6

*Parks Sch. of Business, Inc. v. Symington,*     4
7   51 F.3d 1480 (9th Cir. 1995)

8

*Peters v. Burlington Northern R. Co.*,     19
931 F.2d 534 (9th Cir. 1990)

9

*Santana v. State of California Dept. of Corrections and Rehabilitation*,     23
10   2010 WL 4176364 (N.D.Cal. 2010)

11

*Simon v. Califano,*     10
593 F.2d 121, 123 (9th Cir. 1979)

12

*Socop-Gonzalez v. I.N.S.*,     10, 12
13   272 F.3d 1176 (9th Cir. 2001)

14

*Sonoma County Ass'n of Retired Employees v. Sonoma County*,     5, 25
708 F.3d 1109 (9th Cir. 2013)

15

*Stitt v. Williams*,     11, 12-13
16   919 F.2d 516 (9th Cir. 1990)

17

*Supermail Cargo, Inc. v. United States,*     6
68 F.3d 1204 (9th Cir. 1995)

18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*     6
19   551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)

20

*Terre Haute & I. R. Co. v. State of Indiana ex rel. Ketcham*,     15
194 U.S. 579, 24 S.Ct. 767, 48 L.Ed. 1124 (1904)

21

*Textile Workers Union of America v. Lincoln Mills of Ala.*,     17
22   353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)

23

*United States v. Georgia–Pacific Co.*,     8, 9, 10, 11
421 F.2d 92 (9th Cir.1970)

24

*United States v. Lazy FC Ranch,*     10
25   481 F.2d 985 (9th Cir.1973)

26

*United States v. Menasche,*     16
348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955)

27

*United States v. Wharton,*     8, 9
28   514 F.2d 406 (9th Cir.1975)

**Tables of Authorities (cont.)**

<u>pages</u>

<u>Federal Cases (cont.)</u>

*Vaca v. Sipes*,                                                                                   19
386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)

*Viceroy Gold Corp. v. Aubry*,                                                      3
75 F.3d 482 (9th Cir.1996)

*Wakefield v. Wells Fargo & Company*,                                  11
2014 WL 5077134 (N.D.Cal., 2014)

*Ward v. Chanana*,                                                                     7, 9
2008 WL 5383582 (N.D.Cal. 2008)

<u>California Cases</u>

*Amaral v. Cintas Corp. No. 2*                                               18
163 Cal.App.4th 1157 (2008)

<u>Federal Rules</u>

Federal Rules of Civil Procedure, Rule 8                           5

Federal Rules of Civil Procedure, Rule 12                         4, 6, 25

<u>California Statutes</u>

Code of Civil Procedure §338                                              1

Labor Code §227.3                                                                 17

Labor Code §514                                                                   17

Labor Code §1182.6                                                             17

<u>City Codes</u>

San Jose Mun. Code §4.100.050                                         15, 16, 19

San Jose Mun. Code §4.100.080                                         19

San Francisco Admin. Code, §12R.8                                  17

COMES NOW, Plaintiff, IAN MCCRAY, an individual ("McCray"), and, as and for an opposition to "Defendant's Motion to Dismiss Amended Complaint" ("[The] Motion"), he submits the following:

## I. INTRODUCTION

In seeking an order dismissing McCray's "*First Amended* Complaint for Declaratory Relief and Damages re Breach of the Duty of Fair Representation and Breach of Fiduciary Duty" ("The Amended Complaint"), Defendant submits that the following issues are the ones the Court must address:

"1.    Is McCray's cause of action against [Defendant] alleging breach of the duty of fair representation time-barred under the six month statute of limitations set forth in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)?

2.    Does McCray's Complaint fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) for breach of the duty of fair representation?

3.    Is McCray's state law cause of action for 'breach of fiduciary duty' preempted by the National Labor Relations Act ('NLRA'), which is the federal statutory basis for a union's duty of fair representation to its members?" (The Motion at p. 1:12-21 [word in brackets has been added].)

McCray answers those questions as follows:

1.

(A)    Assuming, without conceding, that the facts of the above-referenced lawsuit ("The[is] Case") bring it within the limited circumstances under which the six-month statute of limitations set down in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) ("*DelCostello*"), is applicable (but see "Plaintiff's Opposition to Motion to Dismiss Complaint[,]" filed on April 26, 2016 at pp. 9:15-13:16, and the authorities identified therein, which arguments and authorities explain that the California statute of limitations pertaining to liability based upon a statutory enactment (Code of Civil Procedure §338) is the correct statute of limitations for his claims), it is not clear from the complaint when McCray should have known that Defendant breached the duty of fair representation ("DFR") it owed  to him and, thus, when his cause of action therefor first accrued, a requisite for determining when the applicable statute of limitations statute expired.

(B)     Again, assuming, without conceding, that the circumstances of The Case bring it within the six-month statute of limitations set down in *DelCostello*, the facts that are alleged through The Amended Complaint adequately describe conduct by Defendant that serves to equitably estop it from relying upon the statute of limitations to deny McCray's claims. (See discussion, *infra*, at pp. 8:1-12:16.)

(C)     Alternatively, and, again, assuming, without conceding, that the circumstances of The Case bring it within the six-month statute of limitations set down in *DelCostello*, the facts that are alleged through The Amended Complaint adequately establish that the expiration of this statute of limitations was equitably tolled. (See discussion, *infra*, at pp. 12:17-13:5.)

2.     The allegations set forth in The Amended Complaint meet the admittedly stringent requirements for imposing liability on Defendant for breaching the duties owed to McCray and his co-Union members, especially when considered in conjunction with "... the factual and legal landscape at the time of [Defendant]'s actions." (*Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) [word in brackets has been added].)  (Discussion, *infra*, at pp. 13:6-23:11.)

3.     McCray's state law claim against Defendant for breach of the fiduciary duties it owed to McCray and his co-Union members affected by Defendant's unlawful agreement is not pre-empted under the NLRA.  (Discussion, *infra*, at pp. 23:12-25:11.)

For these reasons, as further discussed herein, the Court should deny the Motion.

## II.  The Amended Complaint

Through The Amended Complaint, McCray sets forth allegations supportive of three (3) claims for relief against Defendant, including for Declaratory Relief, DFR Breach, and Breach of Fiduciary Duties.  The claims all derive from the actions of Defendant, a labor union claiming to represent the interests of McCray and other of its members similarly situated to him (see The Amended Complaint, ¶10), that purports to have bargained away these individuals' rights to receive a living wage, as determined by the voters of the City of San Jose when they enacted an ordinance formally titled, "An Initiative Ordinance of the City of San Jose Amending Title 4 of the San Jose Municipal Code to Require the Payment of a City-Wide Minimum Wage" ("The Ordinance"),

1    through an election that occurred on November 6, 2012. (*Id.*, ¶ 18.)

2    In this regard, McCray alleges that, even before it was enacted into law, Defendant, as the

3    exclusive bargaining representative for him and others (*Ibid*, ¶18), entered into agreements with

4    various employers located within The City, which agreements were designed to authorize those

5    employers to pay Defendant's members who were employed as food and beverage servers at an

6    hourly rate that is **less than** the minimum wage legally required to be paid for such work performed

7    by The Ordinance.  (*Id.*, ¶s 2, 17, 18, and 43.)   McCray further alleges that, based upon the

8    agreements entered into by and between Defendant and his employer and other employers of workers

9    similarly situated to him, McCray, and such other persons, were not paid the minimum wage to

10   which they are entitled under The Ordinance. (*Id.*, ¶s 18, 43, and 44.)  McCray further claims that

11   the conduct of Defendant, in this respect, was unlawful, authorizing employers of certain of

12   Defendant's members to pay less than the minimum wage **required** by The Ordinance (*Id.*, ¶s 26,

13   and 44), to all of those members' continuing injury.  (*Id.*, ¶s 32 and 46.)   McCray additionally

14   alleges that, by its **clear terms**, The Ordinance does not permit an exemption or opt-out from the

15   minimum wage for any employer who employs a person to work for the employer within The City.

16   (*Id.*, ¶s 50 and 58.)[1]  Thus, McCray asserts that Defendant negotiated unlawful agreements, resulting

17   in substantial financial and economic loss to its members, including McCray.  (See, e.g., *Id.*, ¶58.)

18   These allegations have been incorporated into, and form the basis of, all of McCray's claims

19   for relief. (See The Amended Complaint, ¶s 47, 54, and 63.)[2]  McCray submits that, for the reasons

20   that follow, the allegations in The Amended Complaint sufficiently state claims for relief.  As a

---

22   [1]    McCray acknowledges that in his response to Defendant's Motion to Dismiss The
23   Complaint, he used language that seemed to suggest that a right to a minimum wage may never be
     validly waived. (See "Plaintiff's Opposition to Motion to Dismiss Complaint" at p. 3:14-16.)  That
24   was never his claim, however.  Indeed, as a minimum wage is a product of statutory law, the people,
     through a ballot proposition such as The Ordinance, or the legislature, may provide for a waiver. (*Cf.*
25   *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 491 (9th Cir. 1996).)  McCray's claim here is that,
26   through the language they used, in light of the prevailing law, the voters of San Jose did not provide
     for such a waiver. (See discussion, *infra*, at pp. 13:10-19:11.)

27   [2]    The foregoing does not purport to be a complete recitation of all of the pertinent facts
28   McCray alleges through The Amended Complaint, however.  Indeed, other factual allegations set
     forth in The Amended Complaint are referenced in this memorandum where appropriate.

---

1 consequence, The Motion should be denied.

2 ### III.  LEGAL DISCUSSION

3 **A.    THE LEGAL STANDARDS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE PERTAINING TO MOTIONS TO DISMISS.**

4 Defendant seeks dismissal under Federal Rules of Civil Procedure,[3] Rule 12(b)(6) only. (And

5 see discussion, *infra*, regarding what Defendant improperly advances as part of The Motion, for it

6 should have brought under Rule 12(f).  (*Id*., at p. 25:12-18.)

7 " Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a party's claims.  The

8 Rule provides for the dismissal of a claim 'if as a matter of law **it is clear that no relief could be**

9 **granted under any set of facts that could be proved consistent with the allegations**.'"

10 (*Foresberg v. Fidelity Nat. Credit Services, Ltd.*, 2004 WL 3510771, at *1 (S.D.Cal. 2004), citing

11 to *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) and *Parks Sch.*

12 *of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) [bold typeface represents

13 emphasis supplied].)

14 When reviewing the factual allegations of a complaint in the context of a Rule 12(b)(6)

15 motion, the Court ". . . **should assume their veracity** and then determine whether they plausibly

16 give rise to an entitlement to relief." (*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 137

17 L.Ed.2d 868 (2009) ("*Iqbal*") [bold typeface represents emphasis added].)  Indeed, "Factual

18 allegations must be enough to raise a right to relief above the speculative level, on the assumption

19 that all the allegations in the complaint are true (even if doubtful in fact)." (*Id*.)  In this regard, the

20 allegations of material facts are taken as true and construed in the light *most favorable to the pleader*.

21 (See *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Cahill*

22 *v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).)  "Determining whether a complaint

23 states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court

24 to draw on its judicial experience and common sense." (*Iqbal*, *supra*, 556 U.S. at p. 679, 129 S.Ct.

25 1937.)  A claim is facially plausible when the plaintiff pleads factual content that allows the court

26

27
  ---
  [3]     Hereafter, all undesignated citations to a Rule will be to various of the Federal Rules
28 of Civil Procedure.

1  to draw the reasonable inference that the defendant is liable for the misconduct alleged.  (*Id*., 556

2  U.S. at p. 678, 129 S.Ct. 1937, citing to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127

3  S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("*Twombly*").)

4        Under Rule 8(a)(2), a pleading need only contain a "short and plain statement of the claim

5  showing that the pleader is entitled to relief."  (*Iqbal*, *supra*, 556 U.S. at p. 679, 129 S.Ct. 1937.)

6  The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the

7  "grounds upon which it rests." (*Twombly, supra,* 550 U.S. at p. 556, 127 S.Ct. 1955.)  Thus, a

8  complaint need only state enough factual matter, *<u>all of which is to be taken as true</u>*, to raise a

9  reasonable expectation that discovery will reveal evidence to support the claim.  (*Id.*, 550 U.S. at p.

10  556, 127 S.Ct. 1955.)

11        In this Case, McCray submits that The Amended Complaint sufficiently states the allegations

12  of the claims for the relief he seeks for himself and members of the class he asks to be permitted to

13  represent.  As a result, the fact allegations contained therein are "enough to raise a right to relief

14  above the speculative level."  (*Twombly, supra*, 550 U.S. at p. 555, 127 S.Ct. 1955.)  (And, even

15  should The Court disagree, McCray notes that, "'A district court shall grant leave to amend freely

16  when justice so requires,' and 'this policy is to be applied with extreme liberality.') (. . .). Courts may

17  decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory

18  motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

19  allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility

20  of amendment, etc.'" (*Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d

21  1109, 1117 (9th Cir. 2013), citing to *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712

22  (9th Cir. 2001).)

23  **B.**     **THE AMENDED COMPLAINT IS NOT TIME-BARRED.**

24        Initially, Defendant contends that The Amended Complaint should be dismissed because it

25  was filed in March 2016, well after McCray's cause of action accrued.  (The Motion at pp. 11:19-

26  15:2.)  For the reasons that follow, McCray submits that this contention should be rejected.

27  / / /

28  / / /

1.    **The Amended Complaint Does Not Disclose on Its Face When the Cause of Action Sued Upon Accrued.**

Only where it is clear from the face of The Amended Complaint that a claim is barred by the statute of limitations may it be dismissed on a motion under Rule 12(b)(6):

> 'When the running of the statute is apparent from the face of the complaint . . . then the defense may be raised by a motion to dismiss.' Citation.  However, a cause of action should only be dismissed if "it is clear from the face of the complaint that the statute has run and that no tolling is possible.' Citations ("When a motion to dismiss is based on the running of a statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.").

(*Milliner v. Bock Evans Financial Counsel, Ltd*., 114 F.Supp.3d 871, 883 (N.D.Cal. 2015)*, citing to *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980).)[4]

On the other hand, where the expiration of the statute of limitations cannot be conclusively determined from the face of the complaint, an evidentiary motion, such as a motion for summary judgment, is the proper procedure.  (See *AVCO Corp. v. Precision Air Parts, Inc.,* 676 F.2d 494, 495 (11th Cir. 1982). )  This is especially true when application of a tolling principle may serve to delay the running of the applicable statute of limitations. (*Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir. 1995), equitable tolling doctrine usually not amendable to resolution on Rule 12(b)(6) motion.)

"A cause of action for a breach of the duty of fair representation would appear to accrue when the plaintiff is . . . aware of the circumstances giving rise to h[is] claims against the union . . . ." (*Lopez v. HMS Host, Inc.,* 2010 WL 956457, at *2 (N.D.Cal. 2010) [characters in brackets have been added].)  What is not at all clear here is when McCray, as an unsophisticated less-than-minimum wage worker (The Amended Complaint, ¶s 20  and 41), was ". . . aware of the circumstances giving rise to h[is] claims against the union . . . ." (*Lopez v. HMS Host, Inc. ,supra,* 2010 WL 956457, at *2 [characters in brackets have been added].)  In this regard, McCray alleges that he first became actually aware of a potential legal claim ". . . late in October 2015, . . . ." (The Amended Complaint,

---

[4]    McCray acknowledges that in analyzing a Rule 12(b)(6) motion, The Court may also consider matters that are properly subject to judicial notice (see *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)), but only *so long as* those matters are relevant to the issues that are raised through the motion.  (*Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 795 (N.D.Cal. 2011).)

1   ¶21.) Thus, even under the statute of limitations set forth in *DelCostello*, *supra*, McCray's claim is

2   timely.

3   Defendant takes issue with this claim arguing that, as McCray knew shortly after he was

4   transferred from the position of "busser" to a server, that he was not being paid in compliance with

5   The Ordinance, his claims are time-barred. (The Motion at p. 14:2-7.)  What Defendant omits from

6   its argument, however, is it is not McCray's actual knowledge of the fact that he was being paid less

7   than The Ordinance required that is critical but whether that fact, against the backdrop of being told

8   by his representative — an employee of Defendant — that he had no legal claim because, as

9   Defendant now characterizes it, "[Defendant] believes that the opt-out is perfectly valid[,]" (The

10  Motion at p. 15:22-23 [word in brackets has been added]), nonetheless, required him — an

11  unsophisticated minimum wage worker — to know enough, at that time, to consult counsel and

12  challenge Defendant's unequivocal declaration.  (See and compare *Ward v. Chanana*, 2008 WL

13  5383582 (N.D.Cal. 2008), rejecting a motion to dismiss on statute of limitations grounds, though

14  unlike McCray here, the suit was brought by senior executive of defendant company because,

15  although ". . . , Plaintiff's allegations make it clear that Softline's initial public offering was

16  foreclosed following the May 1999 sale to KPMG[] (. . .) [and] [b]y 1999, therefore, Plaintiff knew

17  that he had suffered financial loss as a result of KPMG's acquisition of Softline[,] [t][hese allegations

18  do not, however, connect Plaintiff's awareness of financial loss to Plaintiff's concomitant awareness

19  of wrongdoing on the part of Defendants. . . . Otherwise, Plaintiff would be penalized for an inability

20  to distinguish between financial injury as a result of Defendants' wrongdoing, and financial loss

21  arising out of potentially legitimate business decisions.  At the very least, the fact-intensive nature

22  of this inquiry suggests that further factual development is required before the Court can conclusively

23  determine that Plaintiff's RICO claim is untimely on grounds of constructive notice." (*Id*. at p. *4.)

24  Thus, the Motion, to the extent it is premised upon the expiration of the statute of limitations, should

25  be denied for "it is [not] clear from the face of the complaint that the statute has run and that no

26  tolling is possible." (*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,* 2011 WL 1044899, at *3

27  (N.D.Cal. Mar. 23, 2011) [word in brackets has been supplied; italicized typeface represents

28  emphasis added].)

PLAINTIFF'S OPPOSITION TO "DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT"         7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> **a.      Even Assuming, *Arguendo*, That the Statute of Limitations Would Have Expired, Proper Application of The Doctrine of Equitable Estoppel Prevents its Expiration for McCray's Claims at Issue Here**.

Alternatively, and only assuming The Court is inclined to accept that, notwithstanding Defendant's unequivocal statements that the opt-out agreement it had with McCray's former employer was entirely legal and, as a result, Defendant would not even permit McCray to commence a grievance regarding it, which, notably, Defendant essentially concedes (see The Motion at p. 15:21-24), McCray's cause of action for DFR, nonetheless, accrued, then The Court needs to evaluate whether McCray's allegations are sufficient to equitably estop Defendant from standing on the statute of limitations.  In this respect, McCray notes that, in order to equitably estop a private party from erecting a statute of limitations against a claim, the pleader must allege facts that would establish "(1) The party to be estopped [knew] the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury." (*United States v. Wharton*, 514 F.2d 406, 412 (9th Cir. 1975), quoting from the decision and opinion in *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) [word in brackets has been supplied].)  McCray has done that here.

Based upon his allegations, Defendant knew, ". . . shortly after [McCray was] . . . re-assigned by the San Jose Marriott from a position as a 'busser' to a food server position in the San Jose Marriott's 'Arcadia' restaurant . . ." that McCray was concerned that he was not being paid in compliance with The Ordinance purportedly because of a negotiated opt-out from The Ordinance. (The Amended Complaint, ¶19.)  Thus, Defendant knew of McCray's claim within six months of the time that McCray would have had a legal claim to assert. (See *Am. Pipe & Const. Co.,* 414 U.S. 538, 554-555, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).)

In response to a direct request to grieve the validity of the opt-out, ". . . D[efendant] advised [McCray] that it would not begin a grievance for PLAINTIFF as against the said Hotel (an 'Employer[,]' as is defined above)[]" for the opt-out was legal and proper and would be honored by Defendant. (*Ibid*.; and see The Motion at p. 15:21-24.)  Such unequivocal conduct clearly satisfies

1  the requirement that ". . . [Defendant] must intend that his conduct shall be acted on or must so act

2  that the party asserting the estoppel has a right to believe it is so intended." (*United States v.*

3  *Wharton*, *supra*, 514 F.2d at p. 412 [word in brackets has been supplied].)

4      McCray then asserts that he ". . . reasonably accepted the advice he received from the

5  employee of D[efendant] who made the statements, as those statements are paraphrased in paragraph

6  no. 19 above, as he is unsophisticated in the law and believed that D[efendant] was duty-bound to

7  enforce all laws that establish minimum standards regarding wages and, thus, would do nothing to

8  undermine his rights to be paid in conformity with all applicable laws and, even more fundamentally,

9  because, without D[efendant]'s willingness to begin the grievance process, [McCray] was powerless

10 to challenge the exemption provided to the San Jose Marriott (an 'Employer[,]' as is defined above)

11 under the grievance process set forth in the CBA by and between SJMEC and Defendant." (The

12 Amended Complaint, ¶20 [word in brackets have been added].)  This claim establishes the third

13 prong of the four-prong test set out in *United States v. Georgia–Pacific Co.*, *supra*, 421 F.2d at p.

14 96, as was quoted in *United States v. Wharton*, *supra*, 514 F.2d at p. 412 and is set forth above.

15 (*Ante*, at p. 8:11-17.)  Finally, McCray alleges that,

16
17
18
> ". . . It was not until late in October 2015, . . . , that PLAINTIFF first learned that
> there is no unconditional waiver contained in The Minimum Wage Ordinance and
> that, in fact, The Ordinance could be waived only through an unambiguous provision
> in a valid collective bargaining agreement but then only where such a waiver is
> '. . . required by federal law[,]' and then only 'to the extent required' by that federal
> law."

19 (The Amended Complaint, ¶21.)

20
21     It is clear that, in relying on the statements made to him by Defendant, he has been injured.

22 Not only has he been deprived of monies he should have been paid for an extended period (*id.*, **"III.**

23 **PRAYER"**), his right to recover those monies is now jeopardized by his reliance on Defendant's

24 misstatements. (*Ward v. Chanana*, *supra*, 2008 WL 5383582 at p. *4.)

25     Defendant ridicules these claims and argues that The Court may ignore them, contending that

26 they are insufficient to establish an estoppel against it from asserting the prevailing statute of

27 limitations. (The Motion at 15:4-20.)  Instead, according to Defendant, McCray would have to allege

28 a "deliberate lie" or "a pattern of false promises" on the part of Defendant, citing an unpublished

district court opinion, *Diaz v. Safeway Inc.*, 2007 WL 2793367(N.D.Cal. 2007), that concluded as such. (*Id.*, at *5, citing to *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001) ("*Socop-Gonzalez*").) However, Defendant fails to note a later decision of this district court, *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, 2009 WL 160214 (N.D.Cal. 2009) ("*Landmark Screens*"), in which This Court observed that the application of the *Socop-Gonzalez* decision is limited to efforts to use the equitable estoppel principle <u>against a government agency</u>:

> Defendants cite *Knowles v. Pac. Gas & Elec. Co.*, No. C 07-2284 CW, 2008 WL 2705097, at *4 (N.D.Cal. July 8, 2008) and *Diaz v. Safeway Inc.*, 2007 WL 2793367, at *5 (N.D.Cal. Sept.26, 2007) for the proposition that equitable estoppel requires affirmative conduct in all instances. However, that rule, as articulated in *Diaz* and repeated in *Knowles,* rests on a mistaken reading of *Socop-Gonzalez . . .*). The *Socop* rule imported by *Diaz and Knowles* applies only to assertions of equitable estoppel against the federal government. *See Mukherjee v. INS,* 793 F.2d 1006, 1008 (9th Cir.1986) (explaining that equitable estoppel may be asserted against a non-governmental party who intentionally has *concealed* material facts, but that "[a] party asserting estoppel against the federal government must .... [show] affirmative misconduct"). The Ninth Circuit in *Socop* merely omitted mention of this limitation on the 'affirmative conduct' rule–presumably because *Socop* itself involved an assertion of equitable estoppel against the government–but in no way expanded the clear holding of *Mukherjee,* upon which the court based its statement of the rule. *See Socop,* 272 F.3d at 1185 (citing *Mukherjee,* 793 F.2d at 1008-09 for 'affirmative misconduct' rule).

(*Landmark Screens, supra,* 2009 WL 160214, at *4. See also, *Morgan v. Heckler,* 779 F.2d 544, 545 (9th Cir. 1985): "Beyond the four traditional elements of estoppel, *see, e.g., United States v. Georgia-Pacific Co,* 421 F.2d 92, 96 (9th Cir.1970), *estoppel against the government* must rest upon affirmative misconduct going beyond mere negligence, *Simon v. Califano,* 593 F.2d 121, 123 (9th Cir.1979) (per curiam). Furthermore, estoppel will apply only where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability. *Id.; United States v. Lazy FC Ranch,* 481 F.2d 985, 989 (9th Cir.1973).)" (*Morgan v. Heckler, supra,* 779 F.2d at p. 545 [italicized text represents emphasis added].)

> Equitable estoppel comes into play only after the limitations period has run and addresses 'the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.' [Citation.] Equitable estoppel is 'wholly independent of the limitations period itself and takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice.' [Citation.] It is 'the venerable principle that "[o]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of

conduct as a defense to the action when brought."' [Citation.] **Thus, '[a] defendant will be estopped to assert the statute of limitations if the defendant's conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the legal action until after the statute has run.**' [Citation.]

(*Wakefield v. Wells Fargo & Company*, 2014 WL 5077134, at *13 (N.D.Cal. 2014) [bold text represents emphasis added].[5])

Reviewing the allegations of The Amended Complaint, ¶s 19 through 22, inclusive, against this standard, i.e., ". . . [e]quitable estoppel is a doctrine adjusting the relative rights of parties based upon consideration of justice and good conscience[]" (*United States v. Georgia–Pacific Co.*, *supra*, 421 F.2d at p. 95), should lead to the conclusion that McCray has adequately pleaded an equitable estoppel against Defendant.  Through the allegations in The Amended Complaint, McCray claims he complained, initially, of his employer and, thereafter, of Defendant about the failure of his employer to fulfill its obligations under The Ordinance.  (The Amended Complaint, ¶ 19.) Defendant knew that McCray and others of its members were subject to a purported carve-out from The Ordinance.  (*Id.*, ¶18.)  It further knew that The Ordinance had a limited carve-out language that differed substantially from other like ordinances.  (See discussion, *infra*, at p. 17:6-21.)  And, Defendant knew — or through the exercise of minimum diligence could have determined — that federal law does not "require" a carve-out from the minimum wage law(s) for CBAs.  (See *American Hotel and Lodging Association v. City of Los Angeles* ("*American Hotel*"), 2016 WL 4437618, at *3 (9th Cir. 2016), citing to *Metro. Life Ins. Co. v. Massachusetts* ("*Metro. Life*"), 471 U.S. 724, 755, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) and *Fort Halifax Packing Co. v. Coyne* ("*Fort Halifax*"), 482 U.S. 1, 21–22, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).)  Moreover, Defendant made plain that it would not permit a grievance to challenge the waiver agreement it had reached with McCray's employer because to do so would be a meritless endeavor since the waiver was clearly and unassailably legal.  (*Id.*, ¶ 19.)  For his part, McCray, a minimum wage worker, lacked the legal sophistication to know that Defendant was wrong and had, in fact, misread and misapplied the opt-

---

[5]       See also, *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990): "The case law is confused and contradictory, but the better reasoning states that equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit. [Citations.]"

out provision. (*Id.*, ¶ 20.)  It is submitted that these allegations are plainly sufficient to estop Defendant from claiming that McCray's failure to file a court case within six months of his having a cause of action should not now preclude him from suing it.

Defendant ridicules McCray's allegations, by claiming that it had "[no] duty to inform [McCray] that the collective-bargaining agreement's opt-out was unlawful, even though [Defendant] believes that the opt-out is perfectly valid." (The Motion at p. 15:21-23.)  Defendant misapprehends the concept of equitable estoppel to assert the running of the statute of limitations: its essence is not whether a defendant is correct or not (though here, as will be demonstrated *infra*, at pp. 13:10-19:11, Defendant was plainly wrong and the product — at best for Defendant — of willful ignorance), rather the focus is on whether Defendant should have known that such statements by it would be reasonably relied on by a plaintiff to forego pursuing his claim before the expiration of the statute of limitations.  Thus, the principle of equitable estopped is intended only to "open the courthouse door" to a plaintiff, not to establish the validity of the plaintiff's claim.  It follows that the allegations in The Amended Complaint sufficiently establish that Defendant should be equitably estopped from seeking to bar McCray's claim through assertion of the statute of limitations

### b.   Alternatively, the Doctrine of Equitable Tolling Prevents Expiration for McCray's Claims Under the Allegations that Are at Issue Here.

Even if one assumes, for argument's sake only, that the court in *Landmark Screens* got it wrong and the principle of equitable estoppel requires "bad faith conduct" on the part of a private person defendant, then, as the *Socop-Gonzalez* court noted, equitable tolling is also potentially applicable. (*Id*, 272 F.3d at p. 1184.)  And McCray submits that he has pleaded sufficient facts to establish that equitable tolling applies to render his claims legally timely.

As described, equitable tolling "'focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant,' . . . ('[E]quitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit.'). (*Socop-Gonzalez*, *supra*, 272 F.3d at p. 1184, citing to *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir.1981); *Lehman v. United States*, 154 F.3d 1010, 1015–1017 (9th Cir.

1998) (discussing both theories), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); and *Stitt v. Williams, supra*, 919 F.2d at p. 522, as quoted in footnote no. 5, *ante.*) McCray submits that the allegations set forth in paragraph nos. 19 through 22, inclusive of The Amended Complaint are clearly sufficient to allege equitable tolling. (See discussion, *ante*, at pp. 8:1-9:20.)

## C.   THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES CLAIMS FOR RELIEF.

### 1.   McCray's Claim for Breach of DFR Claim Is Validly Stated.

For the reasons that follow, McCray submits that he has stated sufficient facts in The Amended Complaint to state a viable breach of DFR claim.

#### a.   The Ordinance Allows Collective Bargaining Opt-Outs Only When Required by Federal Law; Defendant Fails to Demonstrate Such a Requirement Under Federal Law.

McCray does not take exception with the thrust of Defendant's contentions regarding its broad discretion to bargain for its members. (The Motion at p. 16:23-26.) As described by the Ninth Circuit recently in *Addington v. US Airline Pilots Ass'n*, 791 F.3d 967 (9th Cir. 2015) ("*Addington*"):

> The Court has struggled to describe the legal relationship between a union and its members. In *Air Line Pilots Ass'n v. O'Neill* [499 U.S. 65 111 S.Ct. 1127 113 L.Ed.2d 51], the Court observed that members of the Court have variously described the duty as analogous to a fiduciary duty that a trustee owes the trust beneficiaries, or the relationship between attorney and client, or the duty of care and loyalty owed shareholders by corporate officers and directors. Citation. In *O'Neill* itself, the Court resorted to the language of equal protection. Citation. ('A rational compromise . . . was not invidious "discrimination" of the kind prohibited by the duty of fair representation.'). The best statement of the duty appears in *Vaca v. Sipes* [386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)]: 'the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.' Citation. Or, as we have expressed it, '[w]e may decline to give a union the deference owed to an exercise of judgment only where union actions or inactions are "so far outside a wide range of reasonableness that [they are] wholly irrational or arbitrary."' Citation. Accordingly, '[t]o establish that the union's exercise of judgment was discriminatory, a plaintiff must adduce 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" Citation.

(*Id.*, 791 F.3d at pp. 983-984.)

Notwithstanding the deferential standard for reviewing a Union's bargaining conduct, the Court in *Addington*, *supra*, reversed a trial judge's ruling, following a two-day bench trial, that the plaintiffs there had failed to establish a breach of the DFR duty owed to them in the negotiation of

1   pilot seniority lists for airlines engaged in merging their businesses. (*Id.*, 791 F.3d at pp. 985-990.)

2   By contrast, here The Court considers The Parties' arguments by reviewing allegations only, all of

3   which must be accepted as true unless Defendant demonstrates that they are entirely implausible.

4   As explained, the Court ". . . should assume the[ ] veracity [of the factual allegations set forth in The

5   Amended Complaint] and then determine whether they plausibly give rise to an entitlement to

6   relief." (*Iqbal*, *supra*, at p. 679 [words in brackets have been supplied].)  And allegations that lead

7   to a conclusion that, if proven, the defendant will be liable must be fully credited ". . . (even if

8   doubtful in fact)." (*Id.*)

9          Reviewing The Amended Complaint reveals that McCray complains that Defendant

10   negotiated an unlawful contract through which it bargained away his statutory right to be paid a

11   living wage and that, as a result, for an extended period he, and those persons who were his co-

12   members in Defendant, ". . . who have been employed in San Jose, California as food and/or

13   beverage servers, or in any other job title, the principal job functions of which are the same as those

14   that are required to be performed by food or beverage servers, who, at any time on and after March

15   11, 2013, were paid less than the minimum wage prescribed by the laws of the City. . . ." (The

16   Amended Complaint, ¶s 2, 3, 7, 55-61.)   Further, by negotiating a unlawful waiver from The

17   Ordinance, Defendant exposed all of its members to the consequence of re-opening the CBA.

18   ("Appendix B" to Exhibit "A" to "Declaration of Enrique L. Fernandez in Support of Defendant's

19   Motion to Dismiss Amended Complaint" (Doc. 36-1) ("Fernandez Decl.").)

20          For Defendant to prevail on The Motion, it must demonstrate that these claims by McCray

21   are entirely implausible and that, in fact, the opt-out Defendant negotiated while, perhaps, arguably,

22   not satisfactory to all of its members, is, nevertheless, legal for it was determined on a non-

23   discriminatory basis and, thus, was a pure judgment call that may not be second-guessed.  (See

24   discussion in The Motion at pp. 16:22-17:19.)  McCray does not take exception to that claim; rather,

25   at a minimum, he submits, whether the opt-out agreement at issue here is lawful must be determined

26   through a consideration of the evidence.

27          In this regard, McCray points first to the language of The Ordinance which, states:

28

PLAINTIFF'S OPPOSITION TO "DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT"      14

**To the extent required by federal law**, all or any portion of the applicable requirements of this Chapter may be waived in a bona fide collective bargaining agreement, provided that such waiver is explicitly set forth in such agreement in clear and unambiguous terms.

(Ordinance, §4.100.050 [bold typeface represents emphasis added].)

Then he applies the time-honored principles governing statutory interpretation, including that, "[i]n determining the meaning of a statutory provision, 'we look first to its language, **giving the words used their ordinary meaning**.' Citation." (*Lawson v. FMR LLC*, ---- U.S. ----, ----, 134 S.Ct. 1158, 1165, 188 L.Ed.2d 158 (2014) [bold typeface represents emphasis supplied]; see also, *Chamber of Commerce of United States of America v. Whiting,* 563 U.S. 582, 594, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011).)  The verb "required" means "to impose a compulsion or command on[.]" (www.merriam-webster.com.)  It means mandated.  Thus, the common sense reading of The Ordinance yields the unremarkable interpretation that the provision in issue only will come into play "if mandated" by federal law. (See *Terre Haute & I. R. Co. v. State of Indiana ex rel. Ketcham*, 194 U.S. 579, 588, 24 S.Ct. 767, 769, 48 L.Ed. 1124 (1904): "Again, the duty of the corporation to furnish the legislature a statement of expenditures is only 'if required.'" (*Id*., 194 U.S. at p. 588, 24 S.Ct. at 767.)  And Defendant effectively concedes — as it must — that under current federal law, there is no requirement that an opt-out be provided.  (See, *American Hotel, supra*, 119 F.Supp.3d at p. 1198, affm'd in *American Hotel and Lodging Association v. City of Los Angeles*, 2016 WL 4437618:  "Both California statute and case law recognize that the rights to minimum wage and overtime payments are not waivable.  Citations. While '[a]nyone may waive the advantage of a law intended solely for his benefit ... a law established for a public reason cannot be contravened by a private agreement.' Citation."  (*Id*. at p. 1198.))

Notably, The Ordinance does not contain language in its opt-out provision consistent with what Defendant claims that language is intended to convey, to wit, "in the manner required by federal law[.]" (*Livadas v. Bradshaw*, 512 U.S. 107, 125, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).) Nor does it use phrasing such as, "as may be permitted under federal law[.]"  Rather, The Ordinance means what it says: if federal law, as enacted and/or determined by the courts, mandates that a collectively bargained waiver of the minimum wage be permitted in order for The Ordinance to be

1   enforceable, only then is such waiver enforceable.   Indeed, the provision clearly anticipates

2   arguments such as those made, and accepted, in *Chamber of Commerce of U.S. v. Bragdon*, 64 F.3d

3   497 (9th Cir.1995): ". . ., the substantive requirements [of The Ordinance were] so restrictive as to

4   virtually dictate the results of the contract[,]" (*Id*. at p. 501 [words in brackets have been supplied].)

5   It, therefore, follows that this condition precedent, indeed, has a serious prospective purpose as a

6   savings clause if challenged on grounds similar to those presented to the Ninth Circuit in *Chamber*

7   *of Commerce of U.S. v. Bragdon*, *supra*, 64 F.3d 497.

8          In an effort to explain what appears to be a plain directive that qualifies the opt-out provision,

9   Defendant offers language that, while creative, defies most of the other rules of statutory

10  interpretation.   In this respect, Defendant offers that "[t]he introductory phrase . . . — 'to the extent

11  required by federal law' — refers to the fact that labor unions may only waive employees' right to

12  statutory minimum wages (or other minimum labor standards) in collective bargaining agreements

13  through waivers that are set forth in 'clear and unmistakable' terms." (The Motion at p. 5:5-9.)

14  While its effort to explain this language is notable, it is plainly wrong.   This is most easily seen when

15  substituting Defendant's language in place of the actual phrase that is used:

16          ~~To the extent required by federal law~~ [Labor unions may only waive employees' right
           to the minimum wages provided in this Chapter in collective bargaining agreements
17         through waivers that are set forth in 'clear and unmistakable' terms and, thus], all or
           any portion of the applicable requirements of this Chapter may be waived in a bona
18         fide collective bargaining agreement, provided that such waiver is explicitly set forth
           in such agreement in clear and unambiguous terms.

19  (Ordinance, §4.100.050 [strike-out and words in brackets have been added].)

20          It is hornbook law that, when construing a statute, a court has a duty to ". . . avoid a reading

21  which renders some words altogether redundant. Citation." (*Gustafson v. Alloyd Co., Inc.*, 513 U.S.

22  561, 574, 115 S.Ct. 1061, 1069, 131 L.Ed.2d 1 (1995), citing to *United States v. Menasche*, 348 U.S.

23  528, 538–539, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955): "'The cardinal principle of statutory

24  construction is to save and not to destroy.' Citation   It is [The Court's] duty 'to give effect, if

25  possible, to every clause and word of a statute,' Citation, rather than to emasculate an entire section,

26  as [Defendant's] interpretation requires." (*Id*. [words in brackets have been supplied].) Thus, to read

27  The Ordinance as Defendant offers, results in the phrase "collective bargaining agreement" and the

28

requirement for clear and unambiguous terms, appearing twice within this short provision and, as CBAs are, by definition, the product of negotiations by labor unions (*Textile Workers Union of America v. Lincoln Mills of Ala*., 353 U.S. 448, 449–450, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), citing to 29 U.S.C., section 185), it reiterates that concept multiple times as well.

More importantly, reading the opt-out provision in The Ordinance as Defendant offers, renders it having the same meaning as the opt-out contained in another municipality's minimum wage ordinance that had been in effect for nine (9) years before The Ordinance was considered. This language is notable for its straightforwardness: "All or any portion of the applicable requirements of this Chapter shall not apply to Employees covered by a bona fide collective bargaining agreement to the extent that such requirements are expressly waived in the collective bargaining agreement in clear and unambiguous terms." (Sec. 12R8 of the San Francisco Ordinance, as accurately quoted in The Motion as well at p. 7:22-25.)  Thus, and notwithstanding Defendant's claims to the contrary, the opt-out language of the San Francisco Ordinance is strikingly different — in text— from the language of The Ordinance.  Thus, McCray submits, absent **evidence**, one cannot conclude — as Defendant does — that the two provisions, purportedly intending to convey the same concept, written by two municipalities located within 60 miles of one another, nine (9) years apart, are substantively identical, notwithstanding such dramatically different language.  Moreover, the San Francisco Ordinance was not the only one with CBA opt-out language in existence when The Ordinance was considered. (See also, California Labor Code section 227.3, enacted in 1972, section 514, enacted in 1999, and section 1182.6(e), enacted in 1982).)  It is, at least, plausible that The Ordinance does not allow the opt-out that Defendant purported to negotiate with McCray's employer and those employers of a number of McCray's co-members.  And, as ". . . an organization of working people, coming together to win dignity and higher standards in the hospitality industry and beyond[] [that is] proud of the work we do and want to make it better[]" (The Amended Complaint, ¶1 [words in brackets have been supplied]), the presence of The San Francisco Ordinance, and the language used therein to express the CBA Opt-Out, as well as language set forth in the Labor Code statutes, all of which pre-date the enactment of The Ordinance, are relevant to what Defendant knew, or, with a minimum of effort, could have known, about minimum wage laws in California and how

1  collective bargaining agreement opt-outs are written.  (See *Lee v. City of Los Angeles*, 250 F.3d 668,

2  688–689 (9th.Cir. 2001), observing that though documents are not physically attached to the

3  complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the

4  plaintiff's complaint necessarily relies' on them[]" they are matters of public record.)

5      To support its view that The Ordinance permits opt-out through qualifying language set forth

6  in a CBA, Defendant points to a similar ordinance in Berkeley (The Motion p. 23:21-23), to a City

7  of San Jose study of the potential impacts of The Ordinance, which was considered approximately

8  six months before it was presented to the voters (*id*., at pp. 5:23- 6:3), and to the so-called "San Jose

9  Minimum Wage Ordinance — <u>PRELIMINARY</u> --- Frequently Asked Questions" ("FAQs") through

10  which the City of San Jose's Office of Equality Assurance ("The Office") purports to provide

11  "information as a public service." (*Id*., pp. 6:16-7:4.)  McCray submits that none of these sources

12  should be considered.

13      First, the Berkeley ordinance was adopted well after The Ordinance was enacted.  It is, thus,

14  irrelevant to an understanding of the language used in The Ordinance. (See *Fraley v. Facebook, Inc.*,

15  *supra*, 830 F.Supp.2d at p. 795, rejecting a request to judicially notice documents, in part, because

16  ". . . [i]t is thus unclear whether the particular web pages Defendant submits were even in existence

17  at the time Facebook first launched the Sponsored Stories feature or at the time Plaintiffs took the

18  actions that rendered them subject to Sponsored Stories.")

19      Additionally, what a city official thinks a statute will mean is legally irrelevant to a

20  determination of what the statute means. (*Cf*., *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157,

21  1179 (2008) [opinion from a lay person or purported expert about the meaning of an ordinance is

22  inadmissible].)  This is especially true when the claimed evidence is a single statement made in an

23  unverified report that lacks any analysis.

24      Further, as The Office expressly notes as a preface for the answers it provides to the FAQs,

25  the City "is in the preliminary stages of implementing the Minimum Wage Ordinance adopted as

26  Measure D, so the City reserves the right to modify or supplement this document as the need arise

27  and further information is developed. Therefore, we make no express or implied guarantees

28  regarding the accuracy of the information[.]" (Exh. F to Defendant's "Second Request for Judicial

1  Notice in Support of Motion to Dismiss Amended Complaint," p. 79 of 190.)  Thus, even though

2  The Ordinance provides that "guidelines or rules promulgated by The Office shall have the force and

3  effect of law and may be relied upon by Employers, Employees, and other parties[,]" (Ordinance,

4  4.100.080(A)), the information The Office provides through the responses to the FAQs is expressly

5  identified as having no such effect.

6       Here, The Ordinance's plain language provides a condition precedent to the waiver of the

7  minimum wage through collective bargaining – such a waiver, or "opt-out," must be required by

8  federal law.  (Ordinance, §4.100.050.)  With no such requirement under federal law being offered

9  by Defendant, it follows that McCray's claim that coverage under The Ordinance may not be waived

10  is at least legally plausible.  The Motion, therefore, should be denied.

11             **b.**    **Defendant's Agreement Purporting to Exclude McCray and Those**
                  **Similarly Situated to Him from Being Paid the San Jose Required**

12                    **Minimum Wage, Was Arbitrary and Unreasonable and, Thus, Breached**
                  **the DFR**.

13

14       The United States Supreme Court, in its decision in *Air Line Pilots Ass'n, Intern. v. O'Neill*,

15  *supra*, considered a union's breach of the DFR in the context of contract negotiation.  For such

16  activity, the Court extended the rule it announced in *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903,

17  916, 17 L.Ed.2d 842 (1967) – "that a union breaches its duty of fair representation if its actions are

18  either "arbitrary, discriminatory, or in bad faith[.]" (*Air Line Pilots Ass'n, Intern. v. O'Neill*, *supra*,

19  499 U.S. at p. 67.)  The Court further held that a union's actions are "arbitrary" "if, **in light of the**

20  **factual and legal landscape at the time of the union's actions**, the union's behavior is so far

21  outside a 'wide range of reasonableness,' [Citation], as to be irrational." (*Id*., 499 U.S. at pp. 67, 78

22  [bold text represents emphasis supplied].)  Thus, a union's conduct is arbitrary "when it is irrational,

23  when it is without a rational basis or explanation." (*Marquez v. Screen Actors Guild, Inc.*, 525 U.S.

24  33, 46, 119 S.Ct. 292, 300, 142 L.Ed.2d 242 (1998).)

25       Likewise, "arbitrary conduct" includes "unintentional conduct showing 'an egregious

26  disregard for the rights of union members,' [citation], or even a 'reckless disregard' of such rights,

27  [citation] . . . ." (*Peters v. Burlington Northern R. Co.*, 931 F.2d 534, 538 (9th Cir. 1990).)

28       Through The Amended Complaint, McCray alleges that

". . . PLAINTIFF is informed and believes and, thereupon, alleges that DEFENDANT is one local affiliate in a network of labor organizations, as that phrase is defined under federal law, that advertises itself as '. . . an organization of working people, coming together to win dignity and higher standards in the hospitality industry and beyond.  We are proud of the work we do and want to make it better.'  PLAINTIFF is further informed and believes and, thereupon, alleges that DEFENDANT's parent organization claims that it ". . . represents workers throughout the U.S. and Canada who work in the hotel, gaming, food service, . . . .'"

(The Amended Complaint, ¶ 1.)

In this context, McCray asserts that

. . . , DEFENDANT knows, as it is a member of a network of sister locals that represent low wage employees in the hotel and restaurant industries that not a single decided case exists where any court has concluded that a minimum labor standard applied to all workers equally was so onerous that it rendered the statute preempted because, as the United States Supreme Court has cautioned, 'preemption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State.' (*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).)  And while The Minimum Wage Ordinance includes a potential exemption from its scope, the plain language of The Ordinance makes clear that exemption is expressly conditional.

(The Amended Complaint, ¶31.)

Thus, as alleged by McCray through The Amended Complaint, Defendant knew, or should have known, through its representation of low wage workers as a part of ". . . an organization of working people, coming together to win dignity and higher standards in the hospitality industry and beyond[,]" that its agreement to waive the minimum wage protections for McCray and others similarly situated to him was in direct contravention of the "factual and legal landscape" (see the language of The Ordinance, quoted *ante*, and compare with language of San Francisco Ordinance, quoted, *ante,* at p. 17:9-12, e.g., *Dillingham Const. N.A., Inc. v. County of Sonoma*, 190 F.3d 1034, 1039 (1999) and *Associated Builders and Contractors of Southern California, Inc. v. Nunn*, 356 F.3d 979, 988 (9th Cir. 2004), and, thus, it could not validly agree to an opt-out of McCray's former employer from the requirements of The Ordinance.  As a consequence, its negotiation of such an opt-out was  unreasonable and arbitrary under the law.  (*Air Line Pilots Ass'n, Intern. v. O'Neill*, *supra*, 499 U.S. at pp. 67, 78; see also, *Addington v. US Airline Pilots Ass'n*, *supra*, 791 F.3d at pp. 984-985: "[i]n short, a union must act with some legitimate union purpose that 'rationally promote[s] the *aggregate welfare* of employees in the bargaining unit.' Citation." [italicized typeface represents emphasis in the original].)

To, perhaps, place McCray's claims in a more straightforward context, would one say that Defendant was simply exercising its best judgment if it negotiated an opt-out from California's minimum wage statute, which the Courts have held is a completely non-waivable minimum employment standard applicable to collective bargaining agreements that passes muster under the logic of *Metro. Life* and *Fort Halifax*?  (See *American Hotel, supra*, 119 F.Supp.3d at p. 1198.)  Of course not.  Similarly, The Court should determine that the opt-out here was nonsensical as it was unlawful and Defendant knew of that, or rendered itself willfully ignorant to that fact, which it could have readily determined, in part, by considering the dramatically different language for a CBA opt-out in the only other municipal wage ordinance in existence at the time it negotiated the opt-out with McCray's former employer and in multiple state labor statutes.  The nonsensical quality of the opt-out is especially evident, when considered with an agreement to allow the CBA to be re-opened for all of Defendant's members if the opt-out was considered unenforceable.  ("Appendix B" to the CBA, Exhibit "A" to Fernandez Decl.)  Under these circumstances, McCray submits it cannot be concluded that the waiver agreement was simply a reasonable exercise by Defendant of its reasonable judgment.  As the court in *Addington*, *supra*, explained,

> **At its most rudimentary level, the union's duty of fair representation is a duty 'to make an honest effort to serve the interests of all, . . . without hostility to any.'**  Citation. (¶) . . . (¶) . . . While *Steele* [*v. Louisville & Nashville R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944)], firmly established the nondiscrimination principle of the duty of fair representation, the precise contours of that duty are not clear.  In other areas of the law where there is a general duty of nondiscrimination with respect to employment, such as equal protection or Title VII, we have well-developed tests and procedures for identifying unlawful discrimination.  In those contexts, however, the duty runs to individuals, or classes of individuals sharing a common characteristic, such as race, gender, age, or disability. The duty of fair representation in the union context is quite distinct because of the collective nature of the union-employer relationship.  **A union must act in the general interest of its membership, and it may have to compromise on positions that will inevitably favor a majority of its members at the expense of other of its members**.  Citations. (¶) . . . (¶) . . . (¶) So, what constitutes such 'arbitrary conduct' on the part of the union?  For starters, we have made clear that the union's duty to avoid 'invidious' discrimination extends beyond such factors as 'race or other constitutionally protected categories,' explaining that 'these grounds are too restrictive.' Citation.  In the context of negotiating a seniority list, the prohibition on arbitrariness means that 'a union may not juggle the seniority roster for no reason other than to advance one group of employees over another.' Citations(. . .). . . . . **In short, a union must act with some legitimate union purpose that 'rationally promote[s] the *aggregate welfare* of employees in the bargaining unit.'  Citation. Decisions benefitting a majority of the group may not be made merely because the "losers ha[d] too few votes to affect the outcome of an intra-union election.**"

1    Citation.

2    (*Addington v. US Airline Pilots Ass'n*, *supra*, 791 F.3d at pp. 982–985 [italicized bold typeface is

3    emphasis appearing in the original; bold typeface represents emphasis added].)

4          Finally, McCray takes exception to Defendant's efforts to explain that the minimum wage

5    opt-out was the product of unremarkable bargaining by it with various employers, including

6    McCray's former employer. (The Motion at p. 17:22-28, fn. 9.) In this respect, Defendant states that

7    "[it] agreed to the opt-out not for some bad-faith reason but as part of an economic package that

8    secured health-care benefits and pension contributions for employees. (*Id*. at p. 17:22-24.) The only

9    evidence regarding the opt-out, which is cognizable on The Motion, is the opt-out letter, which does

10   not state the consideration for it. ("Appendix B" to CBA, Exhibit "A" to Fernandez Decl.)

11         In this regard, McCray submits the reasoning of the Ninth Circuit in *Addington, supra*, 791

12   F.3d 967 is instructive concerning why this claim cannot be considered on The Motion.  There,

13   during a two-day bench trial, the Union offered that it had not violated the DFR it owed to the senior

14   pilots working for America West Airlines ("AWA") when it agreed to permit the pilot seniority list

15   for US Air to remain unaffected by the merger between the airlines because that understanding was

16   a trade off for superior wages and benefits. (*Id*. at pp. 977, 987-988.)  In reversing the judgment in

17   favor of The Union there, the court observed that there was **no evidence** to support a claim that

18   foregoing the seniority rights of the AWA pilots was, in fact, bargained for. (*Id*., at p. 988:

19   "Certainly, obtaining salary increases, retirement benefits, and pension benefits is as legitimate a

20   purpose as obtaining greater job security. *See id.*  The problem, however, is that the district court did

21   not point to a single piece of evidence supporting its conclusion.  Whereas the record in *Baker* [v.

22   *Newspaper and Graphic Communications Union, Local 6*, 628 F.2d 1561 (DC. Cir. 1980)] clearly

23   showed that a particular seniority regime was a 'major bargaining goal' for the company as it was

24   necessary to keep the company afloat, citation, the district court below pointed to no evidence

25   suggesting that the airline insisted on Paragraph 10(h) in exchange for the benefits it was offering."

26   [words in brackets have been supplied].)  As no evidence is cognizable on The Motion, by a parity

27   of reasoning, Defendant's claims for why it bargained away the minimum wage, even if one

28   assumes, for argument's sake only, that such a claim could be relevant to The Case, could not be

1    considered now.

2        While McCray questions whether the negotiation of legally unenforceable provision in a

3    collective bargaining agreement and, thereafter, honoring such a provision to the financial detriment

4    of certain of a Union's membership could ever be rational, he submits that he has presented at least

5    a *prima facie* case that, if true, would show an irrational willingness to unlawfully bargain away the

6    right to a living wage by Defendant for its most vulnerable members and exposure of its remaining

7    members to a re-opener, i.e., "Appendix B" to Exhibit 1" to The Amended Complaint.  The test on

8    The Motion is not whether McCray will be able to prove his case but rather whether he has stated

9    claims that, if proven, would entitle him to relief.  He submits that he has done that here.  The

10   Motion, to the extent it seeks to cause the dismissal of the declaratory relief and DFR claims set forth

11   in The Amended Complaint (*Id.*, ¶s 47 through 62), should be denied.

12                    **2.    McCray's State Law Claims Are Not Preempted.**

13       Defendant claims that McCray's state law causes are entirely pre-empted by federal law.

14   (Motion, p. 23:26-24:26.)  It adds that in granting the initial motion to dismiss in This Case, The

15   Court ". . . warned McCray that his state law claim is pre-empted." (The Motion at pp. 23:28-24:1,

16   citing to Doc. 30 at p. 2.)

17       Initially, McCray observes that The Amended Complaint is a new and different pleading that

18   has, by law, effectively supplanted the original complaint. (*Santana v. State of California Dept. of*

19   *Corrections and Rehabilitation*, 2010 WL 4176364, at *7 (N.D.Cal. 2010): "'It is well-established

20   that an amended pleading supersedes the original pleading; facts not incorporated into the amended

21   pleading . . . cannot be considered by the court on a motion to dismiss the amended complaint.'

22   Citations.")  Thus, by granting him leave to amend, The Court did not preclude McCray from

23   attempting to re-state a claim for relief for breach of a fiduciary duty against Defendant.

24       Moreover, McCray offers that the decisions cited by Defendant for the preemption

25   proposition are distinguishable.  In *Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008), a panel affirmed

26   a judgment of the district court rejecting a breach of contract claim as pre-empted, reasoning that

27   ". . . Appellants' complaint was indeed that Appellees breached their promise, as expressed in the

28   Teamsters International Constitution and in Union by-laws, to represent them in good faith as their

1   exclusive bargaining representative." (*Id.*, at p. 540.) It pointed out, however, that had the Plaintiffs

2   there demonstrated a breach of a duty "beyond" what it termed ". . . the normal incidents of the

3   union-employee relationship[,]" the decision would have been different. (*Ibid.*) "They did not show,

4   for example, an express provision of the CBA or a collateral contract that imposed additional

5   enforceable duties upon the Union. *Id.* Accordingly, we conclude that the district court did not err

6   in finding that the statutory [DFR] displaces state law that would impose duties upon unions by

7   virtue of their status as the workers' exclusive collective bargaining representative. *Id.*" (*Ibid.*)

8         Consistent with the foregoing, McCray points to the decision and opinion in *Farmer v.*

9   *United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) ("*Farmer*").

10  In *Farmer,* the Supreme Court made clear that it had not applied the preemption doctrine to activity

11  that ". . . was a merely peripheral concern of the [federal law] [or] touched interests so deeply rooted

12  in local feeling and responsibility that, in the absence of compelling congressional direction, we

13  could not infer that Congress had deprived the States of the power to act." (*Id.* at pp.296–297 [words

14  in brackets have been supplied].)  There, a member sued his union and certain of its officers for

15  intentional infliction of emotional distress, alleging that he was a victim of vitriolic personal abuse

16  and harassment that included frequent public ridicule, incessant verbal abuse, and discrimination in

17  referrals for jobs.  In considering a preemption claim there, the Supreme Court emphasized that

18  whether there should be preemption, typically, turns on whether the state has a substantial interest

19  in regulation of the conduct at issue and whether the state's interest threatens undue interference with

20  the federal regulatory scheme. (*See id.* at p. 297, p. 300, and p. 302.)  In concluding that plaintiff's

21  emotional distress claim there was not preempted, the Court reasoned that was so because "[n]o

22  provision of the National Labor Relations Act protects the 'outrageous conduct' complained of by

23  petitioner" (*id.* at p. 302, noting that "there is no federal protection for conduct on the part of union

24  officers which is so outrageous that 'no reasonable man in a civilized society should be expected to

25  endure it'"), and the state had "a substantial interest in protecting its citizens from the kind of abuse

26  of which [the petitioner] complained." (*Id.*)  While acknowledging that the allowance of the claim

27  could impact federal labor laws, The Court, nonetheless, concluded that it was "insufficient to

28  counterbalance the legitimate and substantial interest of the State in protecting its citizens." (*Id.* at

1   p. 304.)  Similarly, ". . . the state-court tort action [could] be adjudicated without resolution of the

2   'merits' of the underlying labor dispute." (*Id.* [word in brackets has been supplied].)

3          In The Case, McCray, for himself and other of Defendant's members that are similarly

4   situated, complains that Defendant negotiated an illegal contract provision violating a local law.

5   Whether a private contract is violative of local law is a uniquely local concern that, if it impacts upon

6   the federal labor law scheme, does so indirectly, i.e., ". . . the state-court tort action [could] be

7   adjudicated without resolution of the 'merits' of the underlying labor dispute." (*Farmer, supra*, 430

8   U.S. at p. 304, 97 S.Ct. 1056, 51 L.Ed.2d 338.)

9          McCray's claims here, as were the plaintiff's claims in *Farmer, supra*, are not pre-empted.

10  The Motion should, therefore, also be denied with respect to the Third Cause of Action, titled,

11  "Breach of Fiduciary Duties[,]" in the Amended Complaint.

12         **3.     Defendant's Motion, to the Extent it Takes Issue with the Punitive and
               Exemplary Damage Claims Set Forth in the Amended Complaint Is
13             Procedurally Flawed and the Argument Should, Therefore, Be Ignored**.

14         Defendant also argues that the punitive and exemplary damages claims asserted by McCray

15  through The Amended Complaint are improper as against a labor organization.  (The Motion at pp.

16  24:1-25:13.)  Plaintiff does not address that contention herein for it is improperly presented. (See and

17  compare Rule 12(b)(1) through (b)(7), inclusive, with Rule 12(f).)  It should not be considered by

18  The Court.

19                              **IV.  CONCLUSIONS**

20         For all of the foregoing reasons, McCray asks the Court to deny The Motion in its entirety.

21  In the event the Court grants the Motion to any extent, McCray requests leave to amend so that he

22  may address any concerns the Court may have with the current pleading.  (*Sonoma County Ass'n of*

23  *Retired Employees v. Sonoma County*, *supra*, 708 F.3d at p. 1117.)

24  Dated: October 28, 2016                    Respectfully submitted,

25                                             PAGANO & KASS, APC

26

27                                              /s/ James L. Pagano
                                               JAMES L. PAGANO, ESQ.,
28                                             Attorneys for Plaintiff, IAN MCCRAY, an
                                               individual, and all persons similarly situated