**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IAN MCCRAY,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITE HERE! LOCAL 19,<br><br>    Defendant. | Case No.  16-cv-01233-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>[Re: ECF 36] |

Plaintiff Ian McCray, upon obtaining the job of server at the Arcadia Restaurant in the San Jose Marriott in June 2013, immediately noticed he was not being paid the minimum wage as required by the City of San Jose Minimum Wage Ordinance ("Ordinance") and asked his union, Defendant UNITE HERE Local 19 (the "Union"), to file a grievance against Marriott on his behalf.  McCray alleges that the Union refused and told him that it had legally negotiated a waiver of the Ordinance for his job classification.  Three years later, McCray sued the Union for violating the duty of fair representation and breaching its fiduciary duty.

The Union has filed a motion to dismiss arguing that McCray's claim that the negotiation of the waiver violated its duty of fair representation is untimely and lacks merit because such a waiver was permissible according to the plain language of the Ordinance.  Mot. 3, ECF 36.  The Union also asserts that the state law claim is preempted by federal law.  *Id.* at 3–4.  For the reasons discussed herein, the Court agrees with the Union and GRANTS Defendant's motion to dismiss WITHOUT LEAVE TO AMEND.

**I.   BACKGROUND**

On November 6, 2012, voters in the City of San Jose passed "Measure D"—the Ordinance. First Am. Compl. ("FAC") ¶ 15, ECF 35; Ex. A to Def.'s Req. Judicial Notice ("RJN") I, ECF

37.[1]  The Ordinance establishes a minimum wage for all employees who work at least two hours per calendar week in the City of San Jose.  Ex. B to Def.'s RJN ("Ordinance") §§ 4.100.030, 4.100.040, ECF 37.  The Ordinance took effect on March 11, 2013, and set an initial minimum wage of $10 per hour, with cost of living increases thereafter.  FAC ¶ 16; Ordinance §§ 4.100.040(B), Section 2.

McCray worked as a server at the San Jose Marriott Hotel (the "Hotel") from June 24, 2013 through August 15, 2015.  FAC ¶ 12.  "[S]hortly after being re-assigned by the San Jose Marriott from a position as a 'busser' to a food server," McCray noticed that his hourly wage was less than what the Ordinance required.  *Id.* ¶ 19.  McCray asked his union representative about this discrepancy, and the Union representative told McCray that he was being paid the hourly wage that the San Jose Marriott and the Union had negotiated.  *Id.*  The Union representative further stated that the Ordinance allowed for such a downward negotiation of hourly wages, and thus, the Union would not begin a grievance against the Hotel.  *Id.*

---

[1] The Union requests that the Court take judicial notice of fourteen documents: (1) Santa Clara County Registrar of Voters, Nov. 4, 2012 Elections Summary; (2) City of San Jose Municipal Wage Ordinance; (3) Official 2016 Minimum Wage Bulletin; (4) San Jose Measure D, Official Title and Ballot Summary; (5) Memorandum from City Clerk to Mayor and City Council Re: Measure D, May 18, 2012; (6) San Jose Office of Equality Assurance, San Jose Minimum Wage Ordinance, Preliminary Frequently Asked Questions, February 27, 2013; (7) San Jose Office of Equality Assurance, San Jose Minimum Wage Ordinance, Frequently Asked Questions, Employer Related; (8) Memorandum from City of Berkeley Commission on Labor to Berkeley Mayor and Members of the City Council re Increase to the Minimum Wage in Berkeley, April 1, 2014; (9) City of Berkeley Ordinance No. 7,352 N.S.; (10) City of Berkeley Housing and Community Development Department, Berkeley Minimum Wage FAQs; (11) Memorandum from City of Berkeley Commission on Labor to Berkeley Mayor and Members of the City Council re Revisions to Minimum Wage Ordinance B.M.C 13.99, November 10, 2015; (12) City of Berkeley Ordinance No. 7,505-N.S.; (13) City of San Jose Ordinance No. 29829; (14) San Jose Office of Equality Assurance, Minimum Wage—Employer Related Frequently Asked Questions.  *See* Def.'s RJN I; Def.'s RJN II, ECF 46.  Because these are public records whose accuracy is not in dispute and because Plaintiff does not object, the Court GRANTS Defendant's request for judicial notice.  *See* Fed. R. Evid. 201(b)–(d); *see also Anderson v. Holder*, 673 F.3d 1089, 1094 (9th Cir. 2012) (taking judicial notice of legislative history and records and reports of administrative bodies); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (city ordinances and official records on government websites are proper subjects for judicial notice); *Lee v. City of Los Angeles*, 250 F.3d 668, 698 (9th Cir. 2001) (judicial notice may be taken of public records); *Badillo v. City of Stockton*, 956 F.2d 884, 887 n.1 (9th Cir. 1992), as amended (Apr. 27, 1992) (taking judicial notice of election results); *City of San Jose v. Office of Comm'r of Baseball*, No. C-13-02787, 2013 WL 5609346, at *4–5 (N.D. Cal. Oct. 11, 2013), *aff'd sub nom. City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686 (9th Cir. 2015) (taking judicial notice of official memoranda of local government entities).

Plaintiff contends that the Union breached its duty of fair representation by negotiating the opt out from the Ordinance. FAC ¶ 50. Relying on the following language, McCray argues that the Ordinance prohibits collective bargaining opt outs: "To the extent required by federal law, all or any portion of the applicable requirements of this Chapter may be waived in a bona fide collective bargaining agreement, provided that such waiver is explicitly set forth in such agreement in clear and unambiguous terms." *Id.*; Ordinance § 4.100.050. McCray asserts that because federal law does not require an opt out, none is permitted under the Ordinance. Opp'n 15.

On March 11, 2016, McCray commenced the above-titled action on behalf of himself and all persons similarly situated, alleging that the Union violated its duty of fair representation and fiduciary duties by negotiating a waiver of the Ordinance as to certain employees. *See* Compl., ECF 1. The Court granted Defendant's motion to dismiss for lack of subject matter jurisdiction, but gave Plaintiff leave to amend to cure the deficiency. Order Granting Mot. to Dismiss with Leave to Amend 2, ECF 30. The Court also noted that Plaintiff had not sufficiently pled facts demonstrating that his federal claims were timely filed or, alternatively, facts supporting the application of equitable estoppel or tolling, and indicated that federal law may preempt McCray's state law claim. *Id.* at 2. Plaintiff filed an amended complaint on September 19, 2016. *See generally* FAC.

## II.  LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed

factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   DISCUSSION

### A.   McCray's Claim for Breach of the Duty of Fair Representation is Time Barred

The Union argues first that the fair representation claim is time barred because McCray became aware that the Union had negotiated a waiver of the Ordinance "shortly after" McCray began working as a server in June 2013.  FAC ¶ 19.  While a statute-of-limitations assertion is an affirmative defense, a defendant may still raise a motion to dismiss based on the defense if the running of the limitations period is apparent on the face of the complaint.  *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (stating that, "[i]f the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss").

The parties dispute the applicable limitations period in their papers.  *See* Opp'n 1, ECF 44.  However, it is clearly established that duty of fair representation claims are subject to a six-month limitations period.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983) (applying the six-month statute of limitation set forth in 29 U.S.C. § 160(b) to a suit against a union for breach of duty of fair representation).  While Plaintiff is correct that the Supreme Court in *DelCostello* held that the six-month statute of limitations applies to "hybrid" duty of fair representation cases in which a union member sues both her employer and her union, the same logic applies to stand-alone duty of fair representation cases.  *DelCostello*, 462 U.S. at 170.  Indeed, the Ninth Circuit has held that *DelCostello*'s six-month statute of limitations applies to duty of fair representation claims against a union alone, and not just to "hybrid" claims.  *See, e.g.*, *Conley v. Int'l Bhd. Of Elec. Workers, Local 639*, 810 F.2d 913, 915 (9th Cir. 1987) (finding that stand alone duty of fair representation claims are subject to the six-month statute of limitations because they are analogous to a duty of fair representation unfair labor practice charge); *Kalombo v. Hughes Mkt. Inc.*, 886 F.2d 258, 259 (9th Cir. 1989).  The six-month period begins to run "when the employee discovers, or in the exercise of reasonable diligence should have discovered,"

the alleged breach of duty of fair representation. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).

In the FAC, McCray admits that he first realized he was being paid less than what was required by the Ordinance "shortly after," he began working as a server on or around June 24, 2013. FAC ¶ 19. Specifically, McCray alleges that

> shortly after being re-assigned by the San Jose Marriott from a position as a "busser" to a food server position in the San Jose Marriott's "Arcadia" restaurant and having received a pay check on which [he] noted his hourly wage was calculated at less than what he—as a low wage San Jose voter who had voted in favor of The Minimum Wage Ordinance—understood was the minimum wage payable to an employee working in San Jose, was told by the employee of [the Union] who was assigned by [the Union] to advise and represent those members who performed food service work at the San Jose Marriott that he was being paid the hourly wage which the San Jose Marriott and [the Union] had negotiated and which wage was legal under The Minimum Wage Ordinance and that, as a result of these claimed facts, despite [McCray's] requests that it do so, [the Union] advised [him] that it would not begin a grievance for [him] as against the said Hotel . . . .

*Id.* Construing this generously, McCray knew about the pay discrepancy by at least the end of July 2013, and the Union's role in negotiating the waiver of the Ordinance and refusal to file a grievance on McCray's behalf. Thus, his claim accrued at that time. *See Allen v. United Food & Commercial Workers Int'l Union*, 43 F. 3d 424, 427 (9th Cir. 1994) ("A cause of action accrues when the plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court."); *Zuniga v. United Can Co.*, 812 F.2d 443, 449 (9th Cir. 1987) (finding that duty of fair representation cause of action accrued when union informed member that it would not pursue a grievance on his behalf); *Galindo*, 793 F.2d at 1509 (cause of action accrues when claimant discovered or should have discovered the acts constituting the alleged breach).

McCray argues, however, that the cause of action did not accrue until he first became aware that the Union's act of negotiating the waiver might violate the Ordinance, *i.e.*, until he became aware of a potential legal claim. Opp'n 6. He relies on the fact that the Union told him his wage was legal under the Ordinance. FAC ¶ 19. The Court disagrees. That McCray did not "know enough, at that time, to consult counsel," does not alter the date on which his cause of

action accrued (though it may allow for equitable estoppel or tolling of the limitations period). Opp'n 7; *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985) ("The statute of limitations is triggered by the defendants' knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law.").

McCray further contends that even if the statute of limitations had expired by the time he brought this suit, the doctrines of equitable estoppel or equitable tolling make his claim timely. Opp'n 8–13. "Both equitable tolling and equitable estoppel can be used to 'stop a limitations period from continuing to run after it has already begun to run.'" *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001) (citation omitted). Equitable tolling "focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant," while estoppel "focuses on the actions of the defendant." *Id.* The Court addresses each doctrine in turn below.

### i. Equitable Estoppel

Equitable estoppel, which the Ninth Circuit equates with fraudulent concealment, "halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (citation and internal quotation marks omitted). "The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and 'must plead with particularity the facts which give rise to the claim of fraudulent concealment.'" *Id.*; *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981). "Conduct or representations" by the defendant that tend to "lull the plaintiff into a false sense of security, can estop the defendant from raising the statute of limitations based upon the principle that no man may take advantage of his own wrong." *Atkins v. Union Pacific R. Co.*, 685 F.2d 1146, 1149 (9th Cir. 1982) (citations and alterations omitted).

Relying primarily on *United States v. Wharton*, 514 F.2d 406 (9th Cir. 1975), and *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C 08-2581, 2009 WL 160214 (N.D. Cal. Jan. 20, 2009), McCray contends that equitable estoppel applies because the doctrine does not require affirmative misconduct. Opp'n 8–12. This reliance, however, is misguided. *See*

6

Reply ISO Mot. 7–9, ECF 42. In *Wharton*, the Ninth Circuit addressed whether estoppel applied against the government; it did not involve a challenge to the statute of limitations. 514 F.2d at 409. Moreover, in subsequent cases, the Ninth Circuit has made clear that equitable estoppel, in the context of tolling the statute of limitations, requires affirmative misconduct, bad faith, or fraud. *See, e.g.*, *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit"); *See, e.g.*, *Mukherjee v. I.N.S.*, 739 F.2d 1006, 1008 (9th Cir. 1986) ("In this circuit, [equitable] estoppel traditionally available against a nongovernmental party who has made a *knowing false representation or concealment of material facts* to a party ignorant of the facts . . . ." (emphasis added)).

McCray's reliance on *Landmark Screens* is equally misplaced. McCray relies on *Landmark Screens* to assert that a plaintiff must allege facts of affirmative misconduct only if he is asserting equitable estoppel against the government. Opp'n 10. The court in *Landmark Screens*, however, applied California law on equitable estoppel with respect to state law claims of legal malpractice and fraud. 2009 WL 160214, at *3–4 & n.2. At issue was whether the claims were timely under California's statute of limitations governing legal malpractice claims. *Id.* The Court therefore had no cause to examine the federal standard for equitable estoppel. Moreover, had *Landmark Screens* held that a demonstration of fraud or bad faith is required only when equitable estoppel is invoked against the government, it would have been inconsistent with binding Ninth Circuit law. *See, e.g.*, *Mukherjee*, 739 F.2d at 1008 (equitable estoppel requires a nongovernmental party make a false representation or conceal material facts). As the Union correctly points out, courts in the Ninth Circuit routinely apply this standard in duty of fair representation cases. Reply ISO Mot. 9 (citing *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987); *Knowles v. Pac. Gas & Elec. Co.*, No. C 07-2284, 2008 WL 2705097, at *4 (N.D. Cal. July 8, 2008); *Diaz v. Safeway Inc.*, No. C 07-01902, 2007 WL 2793367, at *5 (N.D. Cal. Sept. 26, 2007)).

Applying the correct standard, the Court finds that the facts of this case do not justify equitable estoppel. Even assuming that McCray's allegation that the negotiation of the waiver

violated the duty of fair representation, McCray fails to allege any facts from which a reasonable inference could be plausibly drawn to show that the Union engaged in fraudulent conduct "above and beyond the wrongdoing upon which the plaintiff's claim is filed." *Santa Maria v. Pac. Bell*, 202 F. 3d 1170, 1176 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzales*, 272F.3d 1176; *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008). Here, the only wrongdoing alleged is that underlying the duty of fair representation claim—the belief that the Ordinance permits a union to negotiate an opt-out.

Plaintiff does not allege any facts supporting the contention that the Union doubted that its conduct in negotiating the waiver was permissible, and thus, the Court cannot conclude it acted in bad faith by relaying information to McCray consistent with its conduct in negotiating the collective bargaining agreement. Mot. 15–16; Reply ISO Mot. 10. The Union persuasively argues that "[i]t makes no sense to argue that a union has an obligation to inform a member about a cause of action that the union does not believe exists." *Id.* at 15. Moreover, the Union argues that its interpretation of the Ordinance was reasonable, regardless of its accuracy.[2] For example, a study on the effects of the then-proposed Ordinance commissioned by the City of San Jose concluded that the Ordinance would permit the waiver of its requirements in a collective bargaining agreement: "The initiative provides for a waiver of the minimum wage through a bona fide collective bargaining agreement[.]" Ex. E to Def.'s RJN I, ECF 37. The City's Office of Equality Assurance, which is authorized to issue guidelines or rules on the Ordinance, interpreted the Ordinance this way at the time McCray raised the issue with the Union, and continues to do so today. *See, e.g.*, Ex. F to Def.'s RJN I, at 4, ECF 37 ("[T]he provisions of the Minimum Wage Ordinance may be waived by a collective bargaining agreement."); Ex. N to Def.'s RJN II, ECF 46 (same). And, the Ordinance explicitly states that "[a]ny guideline or rules promulgated by the Office [of Equality Assurance] shall have the force and effect of law and may be relied on by Employers, Employees, and other parties[.]" Ordinance § 4.100.080(A). Accordingly, even if this interpretation of the Ordinance is ultimately incorrect, the Court cannot conclude that the Union

---

[2] The Court declines to address the merits of the Union's actions under the Ordinance, as McCray's claim is barred by the statute of limitations.

1  acted in bad faith by relying on these statements to determine that the negotiation of the waiver
2  was lawful and conveying that determination to McCray.  Therefore, equitable estoppel does not
3  apply to toll the statute of limitations.

### ii. Equitable Tolling

McCray alternatively argues that equitable tolling applies to render his claims timely.  Opp'n 12.  The Union disagrees, and argues that because Plaintiff was aware in 2013 that it disagreed with and would not pursue his grievance challenging the legality of the collective bargaining agreement's waiver, equitable tolling cannot apply.  Reply ISO Mot. 10.

Equitable tolling permits a plaintiff to avoid the bar of a statute of limitations when, notwithstanding all due diligence, the plaintiff cannot obtain necessary information to give him the ability to pursue the claim.  *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).  "Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period." *Lehman v. United States*, 154 F.3d 1010, 1016 (1998) (citation and emphasis omitted).  Equitable tolling generally applies when the plaintiff, by exercise of reasonable diligence, could not have discovered vital information bearing on the claim.  *Id.*; *In re United Ins. Mgmt., Inc.,* 14 F.3d 1380, 1386 (9th Cir. 1994).  "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).  Courts apply the equitable tolling doctrine sparingly.  *Lehman*, 154 F.3d at 1016.

Nothing in McCray's amended complaint excuses ignorance of the relevant statute of limitations.  Reply ISO Mot. 11.  Indeed, McCray had all of the information that he needed to file his lawsuit in mid-2013, but did not do so until March 2016.  In his complaint, McCray appears to suggest that equitable tolling should apply because he is "unsophisticated in the law."  FAC ¶ 20.  However, a plaintiff may not claim ignorance of the law as a basis for avoiding a statute of limitations.  *Hinton v. Pac. Enterprises*, 5 F.3d 391, 397 (9th Cir. 1993) (finding "mistake as to the law" does not support equitable tolling); *Stallcop*, 820 F.2d at 1050 (finding equitable tolling not available even though defendant failed to notify her of the applicable statute of limitations because the defendant "had no duty to inform the plaintiff of the statute of limitations"); *see Williams v. United States*, 711 F.2d 893, 899 (9th Cir. 1983) (stating that it is plaintiff's responsibility to

adhere to the procedural requirements underlying his claim and that it is not the defendant's duty to advise the plaintiff where an action might be present); *see Lehman*, 154 F.3d at 1016 (statute of limitations not tolled where plaintiff, who, in pursuing an action against the United States, did not receive legal advice from the government's counsel).

The allegations McCray relies on to support his entitlement to equitable tolling are insufficient. McCray alleges that he believed that the waiver in the collective bargaining agreement violated the Ordinance and knew that the Union was not going to commence a grievance on his behalf, yet he does not allege that he sought legal advice or pursued the issue further. FAC ¶¶ 19–20. Moreover, nothing in McCray's complaint excuses his inaction—the complaint does not state that the Union representative gave McCray "affirmatively misleading (or, indeed, any) advice about the statute of limitations." *Lehman*, 154 F.3d at 1016. The FAC does not state that the Union prevented McCray from filing the action or that the Union's attorney assured McCray that the statute of limitations would be tolled. *Id.* (citation omitted). Accordingly, McCray has not alleged any facts that would support equitable tolling.

Because the Court concludes that neither equitable estoppel nor equitable tolling applies to toll the statute of limitations, the Court GRANTS the Unions motion to dismiss McCray's claim for breach of the duty of fair representation as untimely.

**B. McCray's Claim for Breach of Fiduciary Duty is Preempted**

Defendants also argue that McCray's state law claim for breach of fiduciary duties is preempted by federal law. Mot. 23. McCray contends that his claim is not preempted because the state has a substantial interest in regulating the conduct at issue. Opp'n 24–25. However, contrary to what McCray argues, the Ninth Circuit has held that there can be preemption of state law claims when they implicate the duty of fair representation. *Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008)

"The federal statutory duty which unions owe their members to represent them fairly [ ] displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative." *Id.* at 539. Where, as here, the state law claims are not "substantially dependent" upon the terms of the collective bargaining agreement, *see id.*,

10

section 9 of the National Labor Relations Act ("NLRA") may operate to displace state laws that impose the same duty as the duty of fair representation by virtue of the Union's status as the workers' exclusive collective bargaining representative. *Id.*; *Vaca v. Sipes*, 386 U.S. 171, 182, (1967) (where plaintiff alleges "a breach by the Union of a duty grounded in federal statutes . . . federal law . . . governs his cause of action").

Section 9 of the NLRA provides:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such a unit for the purposes of collective bargaining in respect of rates of pay, wages, hours of employment, or other conditions of employment . . . .

29 U.S.C. § 159(a). Thus, the court in *Adkins* explained that "[t]o bring a successful state law action, aggrieved workers must make a showing of *additional duties* . . . beyond the normal incidents of the union-employee relationship." 526 F.3d at 539 (emphasis added). "Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining representative, such as an express provision of the CBA or a collateral contract." *Id.* To determine if a state claim is preempted under § 9 of NLRA, a court needs to determine whether there is an independent source other than the Union's status as its members' exclusive collective bargaining representative.

Applying the standard laid out by the Ninth Circuit in *Adkins*, the Court finds that the claim for breach of fiduciary duty is preempted. McCray has not demonstrated that the Union breached any duty beyond the normal incidents of the union-employee relationship. McCray simply alleges that the Union breached its fiduciary duties by "negotiating and agreeing" to a waiver of the Ordinance. FAC ¶¶ 65–66. Moreover, McCray relies on the same facts alleged with respect to his claim for breach of the duty of fair representation. *Compare id.*, *with id.* ¶¶ 59–60. Thus, all of McCray's allegations relate to the Union's alleged breach of duty to fairly represent McCray in its capacity as union representatives, and as a result, McCray's state law claim is preempted by section 9 of the NLRA. *Cf. Jay v. Serv. Emps. Int'l Union-United Health Care Workers West*, No. 16-cv-1340, 2016 WL 4411819, at *6–7 (N.D. Cal. Aug. 19, 2016).

Accordingly, the Court GRANTS Defendant's motion to dismiss McCray's claim for breach of fiduciary duty as preempted by federal law.

## IV.  ORDER

From the information provided by Plaintiff at the hearing, further amendment would be futile.  Accordingly, Plaintiff's claims are DISMISSED WITH PREJUDICE.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 13, 2017

_____
BETH LABSON FREEMAN
United States District Judge